UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**BENJAMIN LOPEZ**,
   Plaintiff,

Case No. 1:18-cv-160
Hon.

vs.

**REGAN FOERSTER**, individually and in his official capacity;
**RANDY GRAHAM**, individually and in his official capacity;
**SHERIFF PATRICK WHITEFORD**, in his official capacity;
**TRAVERSE NARCOTICS TEAM**; and
**KALKASKA COUNTY**;
  jointly and severally.

_____/
Joshua Blanchard (P72601)
**BLANCHARD LAW**
Attorneys for Plaintiff
309 S Lafayette St., Ste 208
PO Box 938
Greenville, MI 48838
616-773-2945 / fax: 616-328-6501
josh@blanchard.law
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

  **NOW COMES** the Plaintiff, Benjamin Lopez, by and through counsel and for his complaint against Defendant, jointly and severally, states as follows:

1

## JURISDICTION AND VENUE

1. This is a civil action seeking damages against Defendants for committing acts under color of law, and depriving Plaintiff of rights secured by the Constitution and laws of the United States.

2. Upon information and belief, Defendant Foerster is a citizen of the State of Michigan and a resident of the Western District of Michigan.

3. Upon information and belief, Defendant Graham is a citizen of the State of Michigan and a resident of the Western District of Michigan.

4. Upon information and belief, Defendant Whiteford is a citizen of the State of Michigan and a resident of Kalkaska County, Michigan.

5. At all relevant times, Defendant Regan Foerster was acting in his capacity as duly appointed deputy sheriff for the Kalkaska County Sheriff's Department, in County of Kalkaska, State of Michigan.

6. Upon information and belief, Defendant Foerster was assigned by Sheriff Whiteford to work as a narcotics officer for the Traverse Narcotics Team (TNT).

7. At all relevant times, Defendant Foerster's duties related to TNT included enforcing criminal narcotics laws in Traverse City, County of Grand Traverse, State of Michigan.

8. At all relevant times, Defendant Foerster was acting within the scope of his respective employment under color of law, cloaked with the authority which was granted to him.

9. At all relevant times, Defendant Foerster was an employee of Kalkaska County.

10. At all relevant times, Defendant Whiteford was the duly elected sheriff of Kalkaska County.

11. As a deputy of Defendant Whiteford, at all relevant times, Defendant Foerster was subject to the supervisory authority and oversight of Defendant Whiteford.

12. At all relevant times, Defendant Whiteford was acting as a member of the Board of Directors governing TNT with supervisory responsibility and authority over the operations of TNT

13. Defendant Kalkaska County is a county organized under the laws of the State of Michigan

14. Defendant TNT is an entity formed under an interlocal agreement between various units of local, state, and federal government.

15. Defendant TNT is not a state agency and is amenable to suit. *Manuel v Gill*, 481 Mich 637, 654; 753 NW2d 48 (2008).

16. Upon information and belief, at all relevant times, Defendant Graham was acting in his capacity as a duly appointed police officer for the Michigan State Police.

17. At all relevant times, Defendant Graham was acting within the scope of his respective employment under color of law, cloaked with the authority which was granted to him.

18. This cause of action arose in the County of Grand Traverse, State of Michigan.

19. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

20. The Court has jurisdiction of this action under 42 U.S.C. §1983 and under 28 U.S.C. §1343.

21. The jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §1331.

22. Plaintiff Benjamin Lopez is a citizen and resident of the State of Michigan and a citizen of the United States.

23. At all times material to this Complaint, these Defendant acted toward Plaintiff under color of the statutes, ordinances, customs and usage of the State of Michigan and Counties of Grand Traverse and Kalkaska.

## COMMON ALLEGATIONS OF FACT

24. While acting in his various capacities, the Defendant deprived Plaintiff of his liberty without due process of law and made an unreasonable search and seizure of the person of Plaintiff, thereby depriving Plaintiff of his rights, privileges and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

25. Defendants Foerster and Graham are police officers assigned to the Traverse Narcotics Team (TNT).

3

26. On June 22, 2017, while conducting an investigation as a police officer assigned to TNT, Defendant Foerster had contact with a confidential informant.

27. The confidential informant arranged for the purchase of 1 gram of heroin from an individual named Benny Lopez.

28. Defendant Foerster was present while the confidential informant placed several phone calls to Benny Lopez to arrange the controlled buy of heroin.

29. Defendant Foerster or other members of TNT recorded the phone calls between the confidential informant and Benny Lopez.

30. Defendant Foerster did not connect Plaintiff in any way to the telephone number associated with the recorded calls between the confidential informant and Benny Lopez.

31. The heroin purchase occurred at the location commonly known as 501 Eighth Street in Traverse City, Grand Traverse County, Michigan.

32. Defendant Foerster provided the confidential informant with $240 in pre-recorded buy funds to utilize for the purchase of 1 gram of heroin from Benny Lopez.

33. Defendant Foerster was present for the controlled buy and witnessed the exchange of money.

34. During the exchange, Defendant Foerster was unable to see specific physical characteristics of the male referred to as "Benny."

35. Due to the low lighting at the time of the exchange, Defendant Foerster could not make a positive identification of Benny.

36. After the confidential informant provided the money to Benny, Defendant Foerster followed Benny to the parking lot of the Traverse Area District Library.

37. Defendant Foerster witnessed Benny make contact with two subjects in a black Cadillac Escalade.

38. TNT Detectives followed the Cadillac Escalade.

39. Defendant Foerster observed Benny leave the library parking lot.

40. The confidential informant was contacted by Benny and they met in the parking lot of Family Video off Eighth Street in Traverse City, Michigan.

41. Defendant Foerster witnessed a hand-to-hand transaction between Benny and the confidential informant.

42. Defendant Foerster made contact with the confidential informant who provided him with 1 gram of heroin purchased from Benny.

43. TNT Detectives arranged for a traffic stop to be conducted on the black Cadillac Escalade involved in the heroin transaction.

44. The driver and passenger of the Cadillac Escalade were identified.

45. Neither the driver nor the passenger of the Cadillac Escalade referenced above were identified as Plaintiff.

46. Pursuant to TNT's written policies, Defendant TNT is responsible for the training and supervision of participating personnel including Defendants Foerster and Graham.

47. Defendant Whiteford, as a member of the Board of Directors of TNT, was responsible for the administration of the policies, procedures, and personnel of TNT.

48. On September 12, 2017, Defendant Graham reviewed Defendant Foerster's incident report relating to the June 22, 2017 controlled buy of heroin and instructed, encouraged, and aided Defendant Foerster in pursuing a warrant for Plaintiff.

49. Defendant Foerster's incident report relating to the June 22, 2017 activity described above did not include facts which would support a finding of probable cause that Plaintiff had committed a crime.

50. A reasonable officer with appropriate Fourth Amendment training would have known that Defendant Foerster's incident report regarding the June 22,2017 activity did not support a finding of probable cause that Plaintiff had committed a crime.

51. A reasonable officer would have known after reviewing Defendant Foerster's incident report regarding the June 22, 2017 activity that facts did not exist which would support a finding of probable cause that Plaintiff had committed a crime.

5

52. Plaintiff was not involved in the June 22, 2017 drug sale observed by Defendants.

53. Defendant Foerster submitted a warrant request to the Grand Traverse Prosecuting Attorney's Office for Benjamin Ben Lopez.

54. Defendant Foerster obtained the warrant by falsely swearing under oath to a complaint that alleged that Defendant Foerster observed Benjamin Ben Lopez engage in a hand-to-hand transaction of suspected narcotics with the confidential informant.

55. At the time that Defendant Foerster swore to the complaint alleging that Plaintiff had delivered heroin on June 22, 2017, Defendant Foerster knew that due to lighting conditions and other factors, he could not positively identify Plaintiff as the person who conducted the drug sale.

56. With the knowledge that he could not positively identify Plaintiff as the person who sold the heroin, Defendant Foerster swore under oath to a criminal complaint that alleged that Defendant Foerster would testify that he saw the Plaintiff sell the drugs.

57. Defendant Foerster, in requesting the warrant, did not disclose that he could not positively identify Benjamin Lopez.

58. Plaintiff resides in the City of Grand Rapids, County of Kent.

59. On October 15, 2017, Plaintiff was arrested by officers from the Grand Rapids Police Department pursuant to the warrant obtained by Defendant.

60. Plaintiff was lodged in the Kent County Correctional Facility by the Grand Rapids Police Department until he could be transported by TNT or their agents to the Grand Traverse County Jail.

61. Plaintiff was transported by TNT officers to the Grand Traverse County Jail for court proceedings as result of the warrant obtained by Defendant.

62. Defendants were additionally made aware of Plaintiff's factual innocence when, during transport to the Grand Traverse County Jail, Plaintiff protested his innocence and stated that he had never been to Traverse City.

63. An employee from the Michigan Department of Corrections, Jo Meyers, met with Plaintiff who was incarcerated in the Grand Traverse County Jail.

64. On October 31, 2017, Jo Meyers contacted Defendant and expressed a belief that Plaintiff was misidentified in the criminal case.

65. Jo Meyers advised Defendant Foerster that there was a Benny Lopez that resided in the Grand Traverse area and who was on parole.

66. On or about November 1, 2017, Defendant Foerster met with Christopher Forsyth of the Grand Traverse County Prosecuting Attorney's Office in reference to the mistaken identity of Plaintiff.

67. Defendant Foerster advised the prosecutor's office of his conversation with Jo Meyers from the Michigan Department of Corrections.

68. Defendant Foerster advised the agents of the Grand Traverse County Prosecutor's office that at the time of the transaction, he was unable to see specific physical characteristics of the male referred to as "Benny" and could not make a positive identification.

69. No later than November 1, 2017, the Grand Traverse County Prosecutor determined that the charges against Plaintiff would be dismissed.

70. No later than November 1, 2017, Defendant Foerster was aware that the charges against Plaintiff should be dismissed.

71. No later than November 1, 2017, Defendant Foerster was aware that he had made false statements in support of the criminal complaint and warrant.

72. Defendant Forester was aware that Plaintiff was incarcerated in lieu of a $100,000 bond, pending resolution of the charges related to his June 22, 2017 investigation.

73. Defendant took no steps between October 31, 2017 and Plaintiff's release on November 7, 2017 to correct the false statement he made in order to obtain an arrest warrant for Plaintiff.

74. On November 6, 2017, prosecuting official Christopher Forsyth moved for a dismissal of the case against Plaintiff.

7

75. On November 7, 2017, district court judge Michael Stepka granted the motion and dismissed the case against Plaintiff.

76. Plaintiff was released from the Grand Traverse County Jail on November 7, 2017.

77. Plaintiff served 23 days in the Grand Traverse County Jail on the charges related to the allegations made in the criminal complaint which Defendant Foerster obtained against Plaintiff.

## COUNT I—
## FOURTH AMENDMENT VIOLATION
## (*FRANKS* VIOLATION)

78. Plaintiff alleges and realleges the preceding paragraphs with the same force and effect as if fully set forth herein.

79. Plaintiff's constitutionally protected rights include the right to be free from unreasonable seizure by government agents, including Defendants, as provided for by the Fourth Amendment, made actionable by 42 U.S.C. §1983.

80. Defendant Foerster, in obtaining the warrant for Plaintiff's arrest, omitted material information intending to mislead the issuing magistrate in finding that probable cause existed in violation of Plaintiff's Fourth Amendment rights.

81. Defendant Foerster, in obtaining the warrant for Plaintiff's arrest, knowingly and intentionally made false statements or acted with reckless disregard for the truth in violation of Plaintiff's Fourth Amendment rights.

82. The false and omitted information referenced above was necessary to the finding of probable cause.

83. Defendant Foerster intentionally or with reckless disregard for the truth, caused a warrant to issue by swearing to a complaint containing false statements or providing false oral testimony and omitting material information that would have vitiated probable cause.

84. Defendant could not, in good faith, rely on a judicial determination of probable cause based on his deliberate or reckless disregard for the truth and material omissions in violation of Plaintiff's Fourth Amendment rights.

85. No warrant would have issued for the arrest of Plaintiff if Defendant had not included information he knew or should have known to be false or if Defendant had not omitted information necessary to the finding of probable cause.

86. Reasonable officers should have known these rights, and therefore, Defendant is not cloaked with qualified immunity.

87. As a direct and proximate result of Defendant's actions, Plaintiff suffered a loss of liberty, suffered humiliation, and other damages.

**WHEREFORE**, Plaintiff requests this Court enter Judgment against Defendants, in whatever amount is fair, just, and equitable for the injuries and damages, compensatory and punitive, so wrongfully sustained by Plaintiff together with interest, costs, and attorney fees under 42 U.S.C. §1988.

### COUNT II—
### FOURTH AMENDEMENT VIOLATION
### (WARRANT LACKING PROBABLE CAUSE)

88. Plaintiff alleges and realleges the preceding paragraphs with the same force and effect as if fully set forth herein.

89. Plaintiff's constitutionally protected rights include the right to be free from unreasonable seizure by government agents, including Defendant, as provided for by the Fourth Amendment, made actionable by 42 U.S.C. §1983.

90. Defendant Foerster lacked probable cause when obtaining the warrant for Plaintiff's arrest in violation of the Plaintiff's Fourth Amendment rights.

91. Defendant could not, in good faith, rely upon the warrant in this case because the warrant application was so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

92. Reasonable officers should have known these rights, and therefore, Defendant is not cloaked with qualified immunity.

93. As a direct and proximate result of Defendant's actions, Plaintiff suffered a loss of his liberty, suffered humiliation, and other damages.

**WHEREFORE**, Plaintiff requests this Court enter Judgment against Defendants, in whatever amount is fair, just, and equitable for the injuries and damages, compensatory and punitive, so wrongfully sustained by Plaintiff together with interest, costs, and attorney fees under 42 U.S.C. §1988.

### COUNT III—
### FOURTH AMENDMENT VIOLATION
### (PROSECUTION WITHOUT PROBABLE CAUSE / FEDERAL MALICIOUS PROSECUTION)

94. Plaintiff alleges and realleges the preceding paragraphs with the same force and effect as if fully set forth herein.

95. Defendant Foerster intentionally and maliciously instituted criminal charges for Plaintiff without probable cause, by requesting a warrant without probable cause which contained false information and omitted relevant and material information.

96. Defendant Graham made, influenced, or participated in the decision to prosecute without probable cause in violation of Plaintiff's Fourth Amendment rights.

97. The criminal case against Plaintiff was dismissed, resulting in termination of the charge in Plaintiff's favor.

98. Defendants Foerster and Graham acted with reckless disregard of the law and the legal rights of Plaintiff in causing a criminal proceeding to begin.

99. Plaintiff was subjected to humiliation, fear, arrest and detention against his will, criminal charges, and pain and suffering by the illegal acts of Defendant.

**WHEREFORE**, Plaintiff requests this Court enter Judgment against Defendants, jointly and severally, in whatever amount is fair, just, and equitable for the injuries and damages, compensatory and punitive, so wrongfully sustained by Plaintiff together with interests, costs, and attorney fees under 42 USC §1988.

## COUNT IV—
## FOURTEENTH AMENDMENT VIOLATION
## (DETENTION WITHOUT DUE PROCESS)

100. Plaintiff alleges and realleges the preceding paragraphs with the same force and effect as if fully set forth herein.

101. From the time of Plaintiff's arrest on October 15, 2017 to October 31, 2017, Defendant Foerster knew or should have known that Plaintiff was not the person who engaged in the criminal conduct associated with the warrant.

102. Defendants failed to fully investigate, and exculpatory evidence was available to Defendants at the time of Plaintiff's arrest and during Plaintiff's detention.

103. Defendants acted with something akin to deliberate indifference in failing to ascertain that the Plaintiff was not the person who engaged in the criminal conduct.

104. Defendants pursued the case against Plaintiff despite lacking probable cause.

105. Based upon the incorrect finding of probable cause due to Defendant's false and misleading affidavit, Plaintiff was held in detention for a crime that he did not commit.

106. Defendant's deliberate indifference resulted in a violation of Plaintiff's due process rights under the Fourteenth Amendment.

107. As a direct and proximate result of Defendant's actions, Plaintiff suffered a loss of his liberty, suffered humiliation, and other damages.

**WHEREFORE**, Plaintiff requests this Court enter Judgment against Defendants, in whatever amount is fair, just, and equitable for the injuries and damages, compensatory and punitive, so wrongfully sustained by Plaintiff together with interest, costs, and attorney fees under 42 U.S.C. §1988.

## COUNT V—
## FOURTEENTH AMENDMENT VIOLATION
## (DETENTION WITHOUT DUE PROCESS)

108. Plaintiff alleges and realleges the preceding paragraphs with the same force and effect as if fully set forth herein.

109. From October 31, 2017 until Plaintiff's release from the Grand Traverse County Jail on November 7, 2017, Defendant Foerster knew that Plaintiff was not the person who engaged in the criminal conduct associated with the warrant.

110. Defendant was in possession of exculpatory evidence that Plaintiff was incorrectly identified as the person who conducted the transaction with the confidential informant.

111. Defendant was aware that he had misled the magistrate in issuing the warrant.

112. Defendant acted with something akin to deliberate indifference to Plaintiff's due process rights by failing to take sufficient corrective action after learning Plaintiff was not the person wanted in connection with the crime.

113. Because of Defendant's deliberate indifference, Plaintiff was held in detention for a crime that he did not commit, and which Defendants knew Plaintiff did not commit.

114. Defendant's deliberate indifference resulted in a violation of Plaintiff's due process rights under the Fourteenth Amendment.

115. As a direct and proximate result of Defendant's actions, Plaintiff suffered a loss of his liberty, suffered humiliation, and other damages.

**WHEREFORE**, Plaintiff requests this Court enter Judgment against Defendants, in whatever amount is fair, just, and equitable for the injuries and damages, compensatory and punitive, so wrongfully sustained by Plaintiff together with interest, costs, and attorney fees under 42 U.S.C. §1988.

## COUNT VI—
## SUPERVISORY LIABILITY / FAILURE TO TRAIN OR SUPERVISE

116. Plaintiff alleges and realleges the preceding paragraphs with the same force and effect as if fully set forth herein.

117. Defendant TNT, as the agency responsible for the investigation, Defendant Whiteford, as the duly elected Kalkaska County Sheriff and TNT Board Member, and Defendant Kalkaska County (hereinafter "Supervisory Defendants") have failed to adequately train Defendant Foerster regarding the Fourth Amendment to the United States.

118. According to policy, Defendant TNT is responsible for the supervision and training of participating personnel.

119. Defendant Whiteford, as a member of the Board of Directors of TNT, is responsible for the administration of the policies, procedures, and personnel of TNT.

120. The Supervisory Defendants have been deliberately indifferent to the need to adequately train Defendant Foerster.

121. The failure by Supervisory Defendants can fairly be said to represent a policy for which they are liable for the resulting harm to Plaintiff.

122. Supervisory Defendants knew or in the exercise of reasonable diligence should have known that the conduct of the Defendant Foerster was likely to occur in the absence of proper training.

123. The Supervisory Defendants failed to take any effective preventative or remedial measures to guard against the conduct of Defendant Foerster more fully set forth herein.

124. Had the Supervisory Defendants taken such measures, Plaintiff would not have suffered the deprivation of his rights fully set forth herein. The failure of the Supervisory Defendants amounted to deliberate indifference, or deliberate misconduct, which directly caused the deprivations suffered by Plaintiff.

125. Supervisory Defendants failed to train, instruct, and supervise the Defendant officers, and said failure caused Plaintiff's damages.

126. Supervisory Defendants either knew or should have known of the policy of their employees to engage in seeking and obtaining

      warrants with deliberate or reckless disregard for the truth and without probable cause.

127. Supervisory Defendants either knew or should have known that the other Defendants were likely to engage in conspiratorial wrongs against Plaintiff and Supervisory Defendants had the power to prevent or to aid in preventing the commission of those wrongs but neglected to do so. These wrongful acts were described in Counts I, II, III, IV, and V and these wrongful acts could have been prevented by the exercise of reasonable diligence by Supervisory Defendants.

128. As a direct and proximate result of the aforedescribed unlawful and malicious acts of Supervisory Defendants, Plaintiff was deprived of his right to be secure in his home and person, against unlawful and unreasonable seizure of his person, to equal protection of the laws, and to Due Process of Law, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

129. As a direct and proximate result of Defendant's actions, Plaintiff suffered a loss liberty, suffered humiliation, and other damages.

**WHEREFORE**, Plaintiff requests this Court enter Judgment against Defendants, jointly and severally in whatever amount is fair, just, and equitable for the injuries and damages, compensatory and punitive, so wrongfully sustained by Plaintiff together with interest, costs, and attorney fees under 42 U.S.C. §1988.

### JURY DEMAND

Plaintiff requests a jury for all issues so triable in this case.

|  | Respectfully submitted, |
|---|---|
| Dated: February 15, 2018 | `/s/ Joshua A. Blanchard` |
|  | Joshua Blanchard (P72601) |
|  | **BLANCHARD LAW** |
|  | Attorneys for Plaintiff |
|  | 309 S. Lafayette St., Ste 208 |
|  | PO Box 938 |
|  | Greenville, MI 48838 |
|  | (616) 773-2945 |
|  | josh@blanchard.law |