UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BENJAMIN LOPEZ,

    Plaintiff,

v

REGAN FOERSTER, RANDY GRAHAM,
PATRICK WHITEFORD, TRAVERSE
NARCOTICS TEAM, COUNTY OF
KALASKA,

    Defendants.

No. 1:18-cv-00160

HON. JANET T. NEFF

MAG. ELLEN S. CARMODY

**ORAL ARGUMENT REQUESTED**

Joshua Adam Blanchard (P72601)
Melissa Corinne Freeman (P80075)
Attorneys for Plaintiff
Blanchard Law
309 S. Lafayette St., Ste. 208
P.O. Box 938
Greenville, MI  48838-1991
(616) 773-2945
melissa@blanchard.law
josh@blanchard.law

Gregory R. Grant (P68808)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defs. FOERSTER,
WHITEFORD & COUNTY
310 W. Front Street, Ste. 221
Traverse City, MI 49684
(231) 922-1888/(231) 922-9888 Fax
ggrant@cmda-law.com

Mark E. Donnelly (P39281)
Assistant Attorney General
Attorney for Defendants Graham &
Traverse Narcotics Team (TNT)
State Operations Division
P.O. Box 30754
Lansing, MI  48909
(517) 335-7573
donnellym@michigan.gov

**BRIEF IN SUPPORT OF DEFENDANT TRAVERSE NARCOTICS TEAM'S
(TNT) MOTION FOR SUMMARY JUDGMENT-ORAL
<u>ARGUMENT REQUESTED</u>**

## TABLE OF CONTENTS

                                                                                                   Page

Table of Contents ..................................................................................................... i

Index of Authorities ................................................................................................. ii

Concise Statement of Issues Presented ................................................................... iv

Introduction ............................................................................................................ 1

Standard of Review ................................................................................................. 1

Argument ................................................................................................................ 3

I.      TNT is entitled to summary judgment because it is not a separate legal entity that may be sued. ............................................................................... 3

II.     Even if TNT were a capable of being sued, dismissal is warranted because Plaintiff failed to plead facts sufficient to state a claim under *Monell*. ................................................................................................... 7

Conclusion and Relief Requested ......................................................................... 11

# INDEX OF AUTHORITIES

Page

**Cases**

*Alman v. Reed,*
 703 F.3d 887 (6th Cir. 2013) ............................................................................... 8

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ....................................................................................... 1, 9

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
 528 F.3d 426 (6th Cir. 2008) ............................................................................... 2

*Bickerstaff v. Lucarelli,*
 830 F.3d 388 (6th Cir. 2016) ............................................................................... 9

*Burgess v. Fischer,*
 735 F.3d 462 (6th Cir. 2013) ............................................................................... 8

*Chappell v. City of Cleveland,*
 585 F.3d 901 (6th Cir. 2009) ............................................................................... 3

*City of Canton v. Harris,*
 489 U.S. 378 (1989) ....................................................................................... 8, 9

*D'Ambrosio v. Marino,*
 747 F.3d 378 (6th Cir. 2014) ............................................................................... 8

*Erickson v. Pardus,*
 551 U.S. 89 (2007) ............................................................................................. 2

*Frazier v. Michigan,*
 41 F. App'x 762 (6th Cir. 2002) .......................................................................... 2

*Koontz v. Ameritech Servs.,*
 645 N.W.2d 34 (2002) ........................................................................................ 6

*League of United Latin Am. Citizens v. Bredesen,*
 500 F.3d 523 (6th Cir. 2007) ............................................................................... 1

*Manuel v. Gill,*
 481 Mich. 637 (2008) ......................................................................................... 4

*Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................................. 3

*Matthews v. Jones*,
   35 F.3d 1046 (1994) .................................................................................................. 7

*Monell v. Dept. of Soc. Svcs*,
   436 U.S. 658 (1978) ........................................................................................... passim

*Nernberg v. Pearce*,
   35 F.3d 247 (6th Cir. 1994) ....................................................................................... 3

*Palmer v. Manor Care, Inc.*,
   11 F. App'x 567 (6th Cir. 2001) ................................................................................ 2

*Samaan v. Gen. Dynamics Land Sys.*,
   835 F.3d 593 (6th Cir. 2016) ..................................................................................... 6

*Scherer v. JP Morgan Chase & Co.*,
   508 F. App'x 429  (6th Cir. 2012) ............................................................................. 2

*Scott v. Harris*,
   550 U.S. 370 (2007)] ................................................................................................ 3

*Street v. J.C. Bradford & Co.*,
    886 F.2d 1472 (6th Cir. 1989) .................................................................................. 3

*Trevino v Teachout*,
   2018 WL 732236 (2017) ........................................................................................... 7

**Statutes**

42 U.S.C. §1983 .............................................................................................................. 3

Mich. Comp. Laws § 124.501 ........................................................................................ 3

Mich. Comp. Laws 124.507 ...................................................................................... 5, 6

**Rules**

Fed. R. Civ. P. 17(b) ...................................................................................................... 3

Fed. R. Civ. P. 56(c) ...................................................................................................... 2

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 1, 2

Federal Rule of Civil Procedure 8 ............................................................................... 9

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether the Traverse Narcotics Team (TNT) is a juridical entity capable of being sued.

2. Even if TNT is a juridical entity, whether it is entitled to judgment because plaintiff's sole count against it fails to raise a genuine issue of material fact in support of a viable *Monell* claim.

## INTRODUCTION

In Count VI of his Amended Complaint Plaintiff alleges that TNT should be held liable under the Fourth Amendment for purportedly failing to train or supervise Defendant Foerster. Plaintiff also suggests that this lack of supervision or training amounted to an official TNT policy.

As set forth in this brief, TNT is entitled to summary judgment on the claims against it because it is not a juridical entity capable of being sued. Alternatively, TNT is entitled to judgment because Plaintiff's sole count against it fails to raise a genuine issue of material fact in support of a viable *Monell* claim.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Its allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) citing *Twombly*, 550 U.S. at 555–56. In other words, a complaint may not merely state "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint will be dismissed where it "fail[s] to state a claim upon which relief can be granted." A

motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, including whether the plaintiff's claims are barred by the affirmative defense of collateral estoppel. *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 434–35 (6th Cir. 2012), citing *Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 849–50 (6th Cir. 2006) and *Palmer v. Manor Care, Inc.,* 11 F. App'x 567, 569 (6th Cir. 2001) (both affirming the dismissal of the plaintiff's complaint under Rule 12(b)(6) on collateral estoppel grounds.

In deciding a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accepting all well-pled factual allegations in the complaint as true. *Id.*; see also *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "[t]he court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (collecting cases; internal citations omitted).

When presented with a Rule 12(b)(6) motion, a court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Defendants also bring this Motion pursuant to Fed. R. Civ. P. 56(c). Under Rule 56(c), summary judgment is properly granted when the moving party has shown the absence of a genuine issue of material fact as to essential elements of the

2

non-moving party's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); see also *Nernberg v. Pearce*, 35 F.3d 247, 249 (6th Cir. 1994).  The non-moving party must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

> [T]o withstand a properly supported motion for summary judgment, plaintiff must do more than rely merely on the allegations of her pleadings or identify a "metaphysical doubt" or hypothetical "plausibility" based on a lack of evidence; she is obliged to come forward with "specific facts," based on "discovery and disclosure materials on file, and any affidavits," showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).
>
> To make out a genuine issue of material fact, plaintiff must present significant probative evidence tending to support her version of the facts, evidence on which a reasonable jury could return a verdict for her.  *Scott [v. Harris*, 550 U.S. 370, 380-381 (2007)] citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

*Chappell v. City of Cleveland*, 585 F.3d 901, 912-913 (6th Cir. 2009).

## ARGUMENT

**I.   TNT is entitled to summary judgment because it is not a separate legal entity that may be sued.**

In his Amended Complaint, Plaintiff seeks to impose liability under 42 U.S.C. §1983 for purported Fourth Amendment violations allegedly committed by TNT. Whether TNT is a juridical entity capable of being sued is determined by state law. See Fed. R. Civ. P. 17(b).  And, under current Michigan law, TNT is not a separate legal and, therefore, it is not a juridical entity capable of being sued.

Under Michigan law, task forces such as TNT that are created pursuant to the Urban Cooperation Act, Mich. Comp. Laws § 124.501 (the "UCA"), *et seq.*, are

capable of being sued only if they are separate juridical entities.  In 2008, the Michigan Supreme Court ruled that the UCA's plain language authorized suits against those task forces created under the UCA pursuant to interlocal agreements. *Manuel v. Gill*, 481 Mich. 637, 646-47 (2008).  Specifically, the Court relied on the express language of the prior version of the UCA that listed certain activities that were permitted versus the third sentence of the statute, which proclaimed, "The entity may sue and be sued in its own name." *Id.* citing and quoting Mich. Comp. Laws § 124.507(2).  Perhaps most importantly, in 2008, the language of the UCA was silent on whether or not a separate legal entity was required and, therefore, the Court concluded that every interlocal agreement under the UCA created a separate legal entity.  Thus, the holding of Manuel was twofold: (1) interlocal agreements under the UCA create a separate legal entity; and (2) that separate legal entity may be sued.

However, in response to the Manuel decision, in 2014, the Michigan Legislature amended the UCA with the express goal of addressing whether or not every interlocal agreement under the UCA created a separate legal entity capable of suing or being sued, a/k/a juridical entity.  To remedy any confusion, the Legislature more specifically defined the sort of entity that may or may not be created by an interlocal agreement and named it "a separate legal entity."  In relevant part, the revised language of the UCA now reads:

> (1) An interlocal agreement may provide for a separate legal entity to administer or execute the agreement which may be a commission, board, or council constituted pursuant to the agreement. **If an interlocal agreement does not expressly provide for a <u>separate</u>**

4

**legal entity, then a separate legal entity shall not be created.** If an interlocal agreement does expressly provide for a separate legal entity, the entity shall be a public body, corporate or politic for the purposes of this act. The governing body of each public agency shall appoint a member of the commission, board, or council constituted pursuant to the agreement. That member may be removed by the appointing governing body at will. The separate legal entity shall not be operated for profit. No part of its earnings shall inure to the benefit of a person other than the public agencies that created it. Upon termination of the interlocal agreement, title to all property owned by the entity shall vest in the public agencies that incorporated it.

(2) … The separate legal entity may sue and be sued in its own name.

Mich. Comp. Laws 124.507 (emphasis added).

Thus, pursuant to Michigan statutory authority, an interlocal agreement creates a juridical entity capable of being sued if and only if that agreement expressly provides for a "separate legal entity."

In this case, the interlocal agreement establishing TNT does not expressly provide for a separate legal entity. In 2002, the participating entities of the Michigan Department of State Police and the Counties of Antrim, Benzie, Grand Traverse, Kalkaska, Leelanau, Missaukee and Wexford, Traverse City and the Village of Kalkaska entered into an interlocal agreement (Joint Ex. G, the "2002 Agreement").[1] Pursuant to the express terms of the 2002 Agreement, the participating entities did not create a separate legal entity. (*Id.*). The 2002 Agreement remains effective. Thus, pursuant to Mich. Comp. Laws §124.507(1)

---

[1] Moreover, while the interlocal agreements were not exhibits to Plaintiff's Amended Complaint, they are public records, are referred to in the Amended Complaint R. #52, Pg ID 243, ¶14), and are central to the Plaintiff's claims against JNET. *Bassett,* 528 F.3d at 430.

5

TNT is not a juridical entity capable of suing or being sued because its interlocal agreements did not expressly create a "separate legal entity." Accordingly, TNT is entitled to summary judgment.

It is a long-held and well-known rule of law that, "In interpreting a statute, [courts] avoid a construction that would render part of the statute surplusage or nugatory." *Samaan v. Gen. Dynamics Land Sys.*, 835 F.3d 593, 602 (6th Cir. 2016) quoting *People v. McGraw*, 771 N.W.2d 655, 659 (2009). Indeed, "Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Koontz v. Ameritech Servs.*, 645 N.W.2d 34, 39 (2002).

When the UCA was amended in 2014, the people of Michigan, through the Legislature, expressed that task forces and other agencies created by interlocal agreements are allowed to operate without becoming *de facto* juridical entities. Indeed, the express language of the UCA states, "**If an interlocal agreement does not expressly provide for a separate legal entity, then <u>a separate legal entity shall not be created</u>**." Mich. Comp. Laws 124.507 (emphasis added). Thus, a ruling by this Court that TNT is a juridical entity would render the 2014 amendment a nugatory and mere surplusage, contrary to Michigan and Sixth Circuit law. Indeed, such a ruling could mean that every agency and/or association created by an interlocal agreement is a juridical entity, thereby negating the 2014 legislation. Accordingly, TNT respectfully requests that this Court rule that TNT is

6

not a juridical entity, pursuant to the UCA, because the operative interlocal agreement does not expressly create a separate legal entity capable of being sued.

There is a recent decision on point from the Eastern District of Michigan that has interpreted the UCA following the 2014 amendment. In *Trevino v Teachout*, 2018 WL 732236 (2017), Judge O'Meara held:

> Under the UCA, if "an interlocal agreement does not expressly provide for a separate legal entity, then a separate legal entity shall not be created." M.C.L. 124.507(1). Although Plaintiff argues that JNET behaves as a separate entity, he has not provided authority suggesting that this court may ignore the clear statutory and contractual language to the contrary. (Def Ex 1)

Admittedly in *Teachout*, JNET's interlocal agreement had specific language that "the participating entities do not intend by this agreement to establish this task force or its command board as a separate legal or administrative entity under the [UCA]. Nonetheless, the court held it could not ignore the clear statutory language despite Teachout's assertion (like Plaintiff here) JNET behaves as a separate entity. This Court should hold likewise.

## II.  Even if TNT were a capable of being sued, dismissal is warranted because Plaintiff failed to plead facts sufficient to state a claim under *Monell*.

Even assuming for purposes of this argument only, that TNT was a juridical entity, TNT cannot be held liable for the actions of any of the individual task force officers; rather, TNT can only be held liable if the alleged constitutional violation was the result of an unconstitutional policy or custom. *Monell v. Dept. of Soc. Svcs*, 436 U.S. 658 (1978); *Matthews v. Jones*, 35 F.3d 1046, 1049 (1994).

7

It is well settled that "[a] municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) quoting *Monell*, 436 U.S. at 691. Instead, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). A plaintiff does this by showing that the municipality had a "policy or custom" that caused the violation of his rights. *Monell*, 436 U.S. at 694.

There are four ways of showing the municipality had such a policy or custom: the plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

When proceeding, as here, under the third method for proving TNT's "municipal liability", Lopez must show both a systematic failure and deliberate indifference. The courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Only when the failure to train amounts to "deliberate indifference" on behalf of the city toward its inhabitants, however, will failure to train lead to city liability under § 1983. *Id.* at 389. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor

8

disregarded a known or obvious consequence of his action." *Brown,* 520 U.S. at 410. In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious." *Id.* at 412.

Furthermore, under Federal Rule of Civil Procedure 8, Plaintiff cannot merely assert the existence of an unidentified policy or failure to train. See *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 677-78. To this end, the Sixth Circuit recently confirmed that a plaintiff's claims based upon "speculative assertions" of a custom or policy under *Monell* should be dismissed where he has alleged no facts to suggest that the policies of which he complains actually exist. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016), (affirming the dismissal of the plaintiff's *Monell* claims of inadequate training and supervision).

In this case, Plaintiff has pled that TNT violated the Fourth Amendment by failing to properly train or supervise Defendant Foerster (R. #52, Pg ID 254-255, ¶¶ 119-129). Plaintiff does not identify any TNT policy that allegedly caused the purported violation, but rather suggests that the failure to train Foerster amounts to an official policy (*Id.*, Pg ID 254, ¶123).

Here, Plaintiff fails to allege any "systematic failure to train police officers adequately". Nor does demonstrate any deliberate indifference. Rather the entire crux of the complaint focuses on a single incident and the actions of a single officer. Plaintiff has alleged that Foerster conducted a bad investigation. And Graham

9

acknowledges that Foerster's investigation could fairly be considered substandard because he "took shortcuts" and those shortcuts resulted in the wrong person being arrested in this case. Graham Dep. 146:3-23.

But discovery did not uncover any systemic failures. Plaintiff suggests TNT needs a policy of what to do when the wrong person is arrested. Not so. The only evidence of another individual wrongfully arrested by a TNT member was testified to by Bush (Joint Fact 54). Graham testified that in his eleven years at TNT he doesn't recall a specific instance of the wrong person being arrested Graham Dep. 163:11-17. But he has heard of such instances a couple of times and has told his detectives if they suspect someone has been misidentified to alert him immediately so that he can give them direction (*Id*.). TNT is not required to have a specific written policy dealing with misidentification because it happens so infrequently.

Moreover as testified to by Graham, it is somewhat of a common sense thing—if something isn't right, bring it to your supervisor's attention so that it can be fixed. And Foerster knew this and acted in accordance with this unwritten policy. Foerster testified that he first learned that the wrong person might be in jail on October 31, 2017 and he went to his supervisor Randy Graham. The following day they met with the prosecutor. Foerster 55:7-57:13. The infrequency of mistaken arrests coupled with the immediate actions of Foerster and Graham once they learned the wrong person might be in jail shows neither a systematic problem or deliberate indifference.

And TNT had sufficient policies and tools to prevent cases of misidentification in the first place. And as Plaintiff has alleged, Foerster did not follow the policies or implement the tools (R. 52 Amended Complaint; R 63 Pre-Motion Conference Request, PageID 360-362: Joint Facts). There were MSP Official Orders, Kalkaska County's "Eyewitness Identification" Policy and various unwritten policies or practices including recording controlled buys that were not followed.

And Foerster certainly was not untrained. He received a degree in criminal justice. He was trained by his employer – Kalkaska County. And he received substantial training from MSP once he joined TNT.

And even assuming Plaintiff could make out a *Monell* claim, his claim would have to be directed to Kalkaska County as it is Foerster's employer and—notwithstanding Foerster's assignment to TNT—it is responsible for its agents pursuant to the interlocal agreement.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendant, Traverse Narcotics Team ("TNT") respectfully requests that this Honorable Court grant its motion, thereby dismissing Plaintiff's Amended Complaint against it in its entirety with prejudice, and grant other relief as is just.

                          Respectfully submitted,

                          Dana Nessel
                          Attorney General

                          */s/ Mark E. Donnelly*
                          Mark E. Donnelly
                          Assistant Attorney General
                          Attorney for Defendants Graham &
                          Traverse Narcotics Team (TNT)
                          Michigan Dep't of Attorney General
                          State Operations Division
                          P.O. Box 30754
                          Lansing, MI  48909
                          (517) 335-7573
                          donnellym@michigan.gov
Date:  September 18, 2019          P39281

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing as well as via US Mail to all non-ECF participants.

                          */s/ Mark E. Donnelly*
                          Mark E. Donnelly
                          Assistant Attorney General
                          Attorney for Defendants Graham &
                          Traverse Narcotics Team (TNT)